UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOYCE J. BANKERS, o/b/o KMB, a minor, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-CV-02178 JAR |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This action, filed under 42 U.S.C. § 405(g) on behalf of K.M.B. ("Plaintiff") by her mother, Joyce Bankers, seeks judicial review of the Commissioner of Social Security's final decision that Plaintiff is no longer entitled to previously granted Supplemental Security Income (SSI) childhood disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

### I. Background

On February 21, 2003, the Social Security Administration (SSA) found Plaintiff disabled as of February 1, 2003 due to a speech and language disorder. On September 15, 2015, during periodic review for continued entitlement to benefits, the SSA determined that Plaintiff, who was 15 years old, was no longer disabled as of May 12, 2015. (Tr. 77-80) After her request for reconsideration was denied (Tr. 93-97), Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on April 28, 2016, the ALJ issued a written decision on May 26, 2016, affirming the cessation of disability benefits and finding that Plaintiff's disability ended as of May 12, 2015. (Tr. 13-26) On June 21, 2017, the Appeals Council denied Plaintiff's

request for review. (Tr. 1-5) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000). Plaintiff filed this appeal on July 30, 2017. (Doc. No. 1) Plaintiff filed a Brief in Support of her Complaint on December 31, 2017. (Doc. No. 22) The Commissioner filed a Brief in Support of the Answer on April 4, 2018. (Doc. No. 28)

**II.    Facts**

The Court adopts Plaintiff's Statement of Facts (Doc. No. 23) to the extent they are admitted by the Commissioner (Doc. No. 28-1). The Court also adopts Defendant's Statement of Additional Facts (Doc. No. 28-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

**III.    Standards**

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it sufficient to support a conclusion." Id. In evaluating the substantiality of the evidence, the Court must consider evidence which supports the ALJ's decision as well as any evidence which fairly detracts from the decision. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). Where substantial evidence supports the ALJ's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Id.; Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Social Security Act if she "has a medically determinable physical or mental impairment, which

2

results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c (a)(3)(C)(I).

If a child is found eligible for disability benefits, her continued eligibility must be reviewed from time to time. 20 C.F.R. § 416.994a(a). Upon such review, the ALJ first determines whether there has been any "medical improvement" in the child's condition since the Comparison Point Decision ("CPD"), which is the most recent favorable decision regarding benefits. 20 C.F.R. § 416.994a(b)(1). "Medical improvement is any decrease in the medical severity of [the child's] impairment(s) which was present at the time" of the CPD. 20 C.F.R. § 416.994a(c). "[T]he decrease in severity may be of any quantity or degree," but the ALJ must "disregard minor changes in [the child's] signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that [the] disability has ended." Id. If there has been no medical improvement, the ALJ must find that disability continues, unless a specific exception delineated in the applicable regulations applies. See 20 C.F.R. § 416.994a(b)(1), (e), and (f).

If there has been medical improvement, however, the ALJ proceeds to the second step and considers whether the impairment or impairments previously identified and considered at the CPD still meet or equal the severity of the listed impairment they met or equaled at the time of the CPD. 20 C.F.R. § 416.994a(b)(2). If so, the ALJ must find that disability continues; if not, the ALJ proceeds to the third step. In the third step, the ALJ considers whether the child is currently disabled, considering all impairments the child now has, including any which the child did not have at the time of the CPD, or which were not considered at that time. See 20 C.F.R. § 146.994a(b)(3).

3

The determination of current disability requires its own additional three-part analysis. See Moore ex. rel. Moore v. Barnhart, 413 F.3d 718, 721 (8th Cir. 2005) (citing 20 C.F.R. 416.924). First, the ALJ determines whether the child currently has any severe impairments. 20 C.F.R. § 416.994a(b)(3); A.J.W. v. Berryhill, No. 16-CV-2651 (SRN/LIB), 2017 WL 3668752, at *2 (D. Minn. July 5, 2017), report and recommendation adopted, No. 16-CV-2651 (SRN/LIB), 2017 WL 3208460 (D. Minn. July 28, 2017). If a child's impairment is so "slight" that it causes no more than minimal functional limitations, then the child does not have a "severe" impairment and is not disabled. Oberts ex rel. Oberts v. Halter, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001); 20 C.F.R. § 416.924(c). If, however, it is determined that the child's impairment is severe, the analysis moves to the second part of the additional analysis, and the ALJ determines whether the child's impairment or combination of impairments meets or medically equals the severity of any impairment listed in 20 CFR Part 404, subpart P, Appendix 1. 20 C.F.R. § 416.994a(b)(3). If so, the ALJ must find that disability continues. Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004). If not, the ALJ proceeds to the third part of the additional analysis to determine whether the child's impairment or combination of impairments functionally equals a listing. 20 C.F.R. § 416.994a(b)(3).

To "functionally equal the listings," the severe impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a); Hudson ex. rel. Jones v. Barnhart, 345 F.3d 661, 665 (8th Cir. 2003). The domains are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical

4

well-being. 20 C.F.R. § 416.926a(b)(1)(i)–(vi). In each domain, the regulations provide "age group descriptors" summarizing the typical functioning of children in each group. The age groups include preschool children (age 3 to attainment of age 6), school-age children (age 6 to attainment of age 12), and adolescents (age 12 to attainment of age 18). See, e.g., 20 C.F.R. § 416.926a(h). Plaintiff was born on March 8, 2000 and therefore an adolescent as of May 12, 2015. (Tr. 17)

In evaluating the child's functioning in each domain, the ALJ should consider "how appropriately, effectively, and independently [the child] perform[s] [her] activities compared to the performance of other children [her] age who do not have impairments." 20 C.F.R. § 416.926a(b). A marked limitation is one that "interferes seriously" with the child's ability to independently initiate, sustain, or complete domain-related activities. 20 C.F.R. § 416.926a(e)(2). A marked limitation can also be found if the child has a valid score that is two standard deviations or more below the mean, but not less than three standard deviations, on a comprehensive standardized test designed to measure a particular domain. 20 C.F.R. § 416.926a(e)(2)(iii). An extreme limitation is one that "interferes very seriously" with these abilities. 20 C.F.R. § 416.926a(e)(3). Additionally, a child can be characterized as having an extreme limitation if her test scores are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3)(iii). If the child does not have an impairment which is functionally equal in severity to a listed impairment, the ALJ will find the child is not currently disabled. 20 C.F.R. § 416.994a(b)(3)(i)–(iii); Oberts, 134 F. Supp.2d at 1082.

### IV. Decision of the ALJ

The ALJ found that at the time of the CPD of February 21, 2003, Plaintiff had the medically determinable impairments of a speech and language disorder, which met Listing

5

112.10 of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further found that as of May 12, 2015, there had been a decrease in the medical severity of Plaintiff's impairments present at the time of CPD and that since May 12, 2015, Plaintiff's CPD impairments have not met or medically equaled sections 112.10[1] and 112.11[2], of 20 C.F.R. Part 404, Subpart P, Appendix 1, as that listing was written at the time of the CPD. (Tr. 16-17)

The ALJ also determined that since May 12, 2015, Plaintiff's CPD impairments have not functionally equaled the Listings of Impairments in 20 C.F.R. § 416.994a(b)(2) and § 419.926a and SSR 05-03p. (Tr. 17-26) Specifically, the ALJ found Plaintiff had a less-than-marked limitation in the domain of attending and completing tasks and no limitation in the domain of interacting and relating with others.[3] (Tr. 23-25) The ALJ concluded that Plaintiff's disability ended as of May 12, 2015, and that she has not become disabled again since that date. (Tr. 26)

In reaching his conclusions, the ALJ considered all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, including opinion evidence. The ALJ considered a consultative

---

[1] A finding of disability under the listing 112.10 for Autism Spectrum Disorder (20 C.F.R. Pt. 404, Subpt. P, App 1, § 112.10) requires medically documented findings of (i) qualitative deficits in verbal and nonverbal communication and social interaction; (ii) significantly restricted, repetitive patterns of behavior, interests, or activities; and (iii) either an extreme limitation in one, or marked limitations in two of the following areas of mental functioning: ability to understand, remember, or apply information; ability to interact with others; ability to concentrate, persist, or maintain pace; or ability to adapt or manage oneself.

[2] A finding of disability under the listing 112.11 for Attention Deficient Hyperactivity Disorder ("ADHD") (20 C.F.R. Pt. 404, Subpt. P, App 1, § 112.11) requires medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity.

[3] The ALJ also found Plaintiff had a marked limitation in the domain of acquiring and using information (Tr. 21-22), and no limitation in the domains of moving about and manipulating objects (Tr. 23-24), caring for yourself (Tr. 24-25), and health and physical well-being (Tr. 25). These findings are not at issue in the instant case.

6

speech and language evaluation conducted by Latishae Davis, MS, CCC/SLP on April 4, 2015. (Tr. 18, 435-447) Ms. Davis diagnosed Plaintiff with a severe receptive and expressive language disorder based on her scores on the CELF-4[4]. Plaintiff had difficulty recalling sentences, formulating sentences, explaining what and why words are related, defining words, problem solving, and understanding paragraphs. Plaintiff's score on the GFTA-2[5] revealed no dysfluent speech patterns or conversational errors.

Based on an informal speech and language sample, Ms. Davis reported that Plaintiff was able to provide all personal information including her first and last name and date of birth. Plaintiff correctly organized items into categories. She was able to follow both single and two-step directives accurately but demonstrated difficulty with directions that included three steps and sequencing tasks. Ms. Davis noted Plaintiff's conversational speech to be 100% intelligible to both the trained and untrained listener and an informal oral peripheral examination revealed her oral-motor structure and function to be adequate for speech production. Plaintiff did not display any dysfluent speech patterns on the date of assessment and her current IEP indicates fewer than five dysfluencies in a 15 minute conversation.

The ALJ also considered a consultative examination completed by Jena Budreau, Psy.D., on April 29, 2015. (Tr. 448-453) Dr. Budreau reported that Plaintiff appeared able to engage in age-appropriate activities in an independent, appropriate, and effective manner. Dr. Budreau

---

[4] The Clinical Evaluation of Language Fundamentals Screening Test-Fourth Edition (CELF-4) is a standardized test designed to assess the presence of a language disorder or delay in children aged 5-21. www.pearsonclinical.ca/en/assessments.com (last visited September 6, 2018).

[5] Goldman-Fristoe Test of Articulation- Second Edition (GFTA-2) is a means of assessing an individual's articulation of the consonant sounds of Standard American English. www.pearsonclinical.com/impages/Products/GFTA-2/gfta2/pdf (last visited September 6, 2018).

assigned Plaintiff a Global Assessment of Functioning Score of 70, indicating she would have only mild difficulties in social, occupational and educational functioning.

The record also contains a childhood disability evaluation form completed by Tricia Petrillo, MS, CCC/SLP, and Marsha Toll, Psy.D., dated April 29, 2015 to May 12, 2015. (Tr. 454-459) Plaintiff was reported to have marked difficulties in the domain of acquiring and using information based on an April 4, 2015 speech and language evaluation and standardized testing at school. Plaintiff was found to have less than marked limitations in the domain of attending to and completing tasks based on an Individualized Education Program ("IEP") that reported she has difficulty understanding new concepts, staying focused and task completion and needs modifications/accommodations to achieve her academic goals. With regard to interacting and relating to others, Plaintiff was found to have less than marked limitations. Her IEP indicates that she works hard and is a cooperative, pleasant student who works with peers.

A second childhood disability evaluation form completed by Despine Coulis, M.D., Barbara Markway, Ph.D., and Sarah Basye, MS, CCC/SLP, dated July 27, 2015 to July 28, 2015, reports marked limitations in the domain of acquiring and using information due to her language issues. (Tr. 460-65) In the domain of attending to and completing tasks, it was noted that Plaintiff's September 2014 IEP showed she had difficulty remaining on task. However, her report card showed all passing grades except one class with an indication that she tries hard, had inconsistent effort, poor use of time and does not complete assignments. In the domain of interacting with others, Plaintiff was found to have no limitations. Her speech and language consultative examination in April of 2015, reported 100% speech intelligibility; Plaintiff was cooperative/attentive during testing and no behavior problems were indicated.

In a medical source statement dated October 30, 2015, Plaintiff's treating psychiatrist LaRhonda Jones, M.D., opined that Plaintiff would have extreme limitations in the domains of attending to and completing tasks and caring for herself and marked limitations in the domains of acquiring and using information, interacting with others and health and physical well-being. (Tr. 466-471) The ALJ gave little weight to Dr. Jones' opinions because the extreme and marked limitations were "significantly inconsistent" with the opinions of other physicians, speech and language pathologists and physicians. The ALJ also noted that Dr. Jones' medical source statement was completed in anticipation of litigation and not in the course of treatment. (Tr. 21)

The ALJ also gave little weight to a treating source statement from Rosemary Jackson, LSCW, dated March 8, 2016 (Tr. 540-41) because she failed to present a definitive opinion on Plaintiff's functional limitations and merely recited the medical evidence of record. Furthermore, Ms. Jackson is not considered an acceptable medical source under the Social Security Act. (Tr. 21)

Both Plaintiff and her mother testified at the hearing. In his decision, the ALJ discussed Plaintiff's mother's testimony that she adopted Plaintiff when she was three months old; that Plaintiff has a familial history of substance abuse; that Plaintiff was diagnosed with attention deficit hyperactivity at the age of three and has received accommodations for her diagnosis since kindergarten; that Plaintiff has "anger problems;" that she has been worried that Plaintiff thinks "more like a ten-year old than a fifteen-year-old;" and that Plaintiff takes medication for her symptoms, but they are still troublesome to her. Plaintiff's mother also indicated that Plaintiff has been having trouble sleeping at night. She denied that Plaintiff exhibits any behavioral problems at school.

The ALJ also discussed Plaintiff's testimony that she has no trouble maintaining her attention as long as she takes her medicine. When asked how she was feeling lately, Plaintiff replied, "Fine." She described herself as a "pretty happy" girl who "gets mad about every other day." Plaintiff denied taking her anger out on anyone or on personal property. She reported no sleep problems as long as she takes her medication and denied any symptoms indicative of a mood, anxiety, psychotic, or eating disorder.

## V.     Discussion

In her appeal of the ALJ's decision, Plaintiff argues the ALJ erred by failing to properly consider functional equivalence and the opinion evidence. The Commissioner argues that substantial evidence on the record as a whole supports the ALJ's decision.

### A. Functional equivalence

As discussed above, functional equivalence is measured in several ways. If the child's condition results in extreme limitations in one or more specific functions which are described as criteria for disability in the listed impairments, she will be found disabled. Oberts, 134 F. Supp. 2d at 1082 (citing 20 C.F.R. § 416.926a(b)(1)). Also, if a child's condition results in "extreme" limitation of functioning in one broad area of functioning, or "marked" limitation of functioning in two broad areas of functioning, she will be found disabled. Id. (citing 20 C.F.R. § 416.926a(b)(2)). In determining a child's functioning in a domain, parents and teachers, as well as medical providers, are important sources of information. 20 C.F.R. § 416.924a; Kilbert v. Berryhill, No. 4:16CV462 AGF, 2017 WL 4222594, at *5 (E.D. Mo. Sept. 22, 2017). Plaintiff claims that substantial evidence demonstrates she suffers marked limitations in the domains of attending and completing tasks, and interacting and relating with others. (Doc. No. 22 at 3-13)

#### 1. Attending and completing tasks

10

When analyzing the attending and completing tasks domain, the ALJ considers how well the child is able to focus and maintain his or her attention and how well the child begins, carries through, and finishes activities. England v. Astrue, 490 F.3d 1017, 1022 (8th Cir. 2007) (citing 20 C.F.R. § 416.926a(h)). An adolescent should be able to maintain attention and concentration on a task for extended periods of time and independently plan and complete long-range projects, and organize materials. 20 C.F.R. § 416.926a(h)(2)(v). Examples of limited functioning in this domain include being easily startled, distracted, or overreactive to sounds, movement, or touch; being slow to focus or complete activities of interest; being repeatedly sidetracked from activities or frequently interrupting others; and requiring extra supervision to keep on task. 20 C.F.R. § 416.926a(h)(2)(v)(3).

Plaintiff argues that the limitations and accommodations in both of her IEPs support a finding that she has a marked limitation in this domain, and specifically, her difficulty with task focus and completion. In his decision, the ALJ acknowledged that Plaintiff has some functional limitation in this domain, specifically her difficulty understanding new concepts, staying focused, and completing tasks, as well as her need for modifications/accommodations to achieve her academic goals. (Tr. 22, 473-91, 364-76) However, the ALJ noted that Plaintiff's report cards showed passing grades with the exception of one class, and teacher comments described Plaintiff as a "good worker and attentive listener" who "always trie[d]," "prepared daily work reliably", and "showed steady improvement." (Tr. 22-23, 278, 283-86, 462, 492-94) During a speech and language evaluation in April 2015, Plaintiff was able to follow both single and two-step directives accurately and correctly organize items into categories. (Tr. 436-37) In a consultative exam from April 2015, Plaintiff demonstrated ability to engage in age-appropriate activities in an independent, appropriate, and effective manner. (Tr. 448-453) In addition,

11

Plaintiff reported she has no trouble maintaining her attention as long as she takes her medication. It is well established that impairments that are controllable or amenable to treatment do not support a finding of total disability. Johnson ex rel. J.J. v. Colvin, No. 2:14CV0093 TCM, 2015 WL 4546168, at *13 (E.D. Mo. July 28, 2015) (citing Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999); Scales v. Barnhart, 363 F.3d 699, 705 (8th Cir. 2004)).

The Court finds that based on the totality of evidence, substantial evidence supports the ALJ's decision. The Court further finds the ALJ's decision is consistent with the relevant Social Security Rulings and other legal requirements. The Court may not reverse the decision of the ALJ merely because substantial evidence might have supported a different conclusion. See Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) ("We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact.").

### 2. Interacting and relating with others

When analyzing the domain of interacting and relating with others, the ALJ considers how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of others' possessions. 20 C.F.R. § 416.926a(i). "Interacting means initiating and responding to exchanges with other people, for practical or social purposes." 20 C.F.R. § 416.926a(i)(1)(i). "Relating to other people means forming intimate relationships with family members and with friends who are [the child's] age, and sustaining them over time." 20 C.F.R. § 416.926a(i)(1)(ii). To interact and relate, a child must, among other things, "respond appropriately to a variety of emotional and behavioral clues," "participate in verbal turn taking

12

and nonverbal exchanges; consider others' feelings and points of view; follow social results for interaction and conversation; and respond to others appropriately and meaningfully." 20 C.F.R. § 416.926(i)(1)(iii).

Adolescents should "be able to initiate and develop friendships with children" of the same age; "relate appropriately to other children and adults, both individually and in groups"; "begin to be able to solve conflicts between [one]self and peers or family members or adults outside [one's] family"; "recognize that there are different social rules for [oneself] and [one's] friends and for acquaintances or adults"; and "be able to intelligibly express [one's] feelings, ask for assistance in getting [one's] needs met, seek information, describe events, and tell stories, in all kinds of environments . . . and with all types of people . . ." 20 C.F.R. § 416.926a(i)(2)(v).

Examples of limited functioning in this domain include having no close friends, or friends that are all older or younger than you; avoiding or withdrawing from people you know, or being overly anxious or fearful of meeting new people or trying new experiences; having difficulty playing games or sports with rules; having difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance; and having difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(2)(v)(3). There is no evidence in the record that Plaintiff suffers from any of these.

Plaintiff claims that because her speech and language skills fall in the "severely impaired" range, a proper analysis of her claim would find she has at least marked limitations in the domain of interacting and relating with others. (Doc. No. 22 at 5) A marked effect on one activity or function within a domain is enough to find a marked limitation within the domain, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C) ("A marked limitation may arise when several

13

activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."). In this case, however, that principle does not apply because substantial evidence supports the ALJ's finding that none of Plaintiff's activities or functions within the domain of interacting and relating with others were markedly impaired.

The ALJ cited Plaintiff's own testimony that she had no suspensions at school and was in her second year in the JROTC program. (Tr. 23) The ALJ also referenced the speech and language evaluation conducted by Ms. Davis in April 2015 reporting that Plaintiff had 100% intelligibility in conversational speech. (Tr. 23, 436-437) Although Plaintiff reportedly argued with her siblings and could be defiant towards her mother, the ALJ reasonably concluded this behavior was "not atypical for a 16 year-old." (Tr. 23) Plaintiff's mother reported that Plaintiff has "a lot of friends" who she enjoys spending time with at school and on the weekends. (Tr. 452) She was unaware of Plaintiff being bullied by other children or participating in any bullying behaviors. (Id.) Plaintiff's teachers describe her as a cooperative, pleasant student who works well with her peers and others. (Tr. 473-91, 364-76) Examiners remarked that Plaintiff was polite and compliant. Dr. Budreau assigned Plaintiff a GAF score of 70, which indicates only mild difficulties in social functioning. (Tr. 453) Because there is substantial evidence of record indicating that Plaintiff is not limited in this domain, the Court will not disturb the ALJ's finding.

### B. Opinion evidence

Here, Plaintiff claims the ALJ erred by giving little weight to the opinion of her treating psychiatrist Dr. Jones and by failing to address the October 22, 2014 opinions of consultative psychological examiner Heather Derix, Psy.D. In evaluating opinion evidence, the Regulations

14

require the ALJ to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 416.927(f)(2)(ii). Findings made by State agency medical or psychological consultants are considered opinion evidence and, as such, the ALJ must explain in the decision the weight accorded to such opinions. 20 C.F.R. § 416.927(f)(2)(i), (ii).[6] In determining whether the ALJ properly considered the medical opinion evidence, the Court must review the ALJ's discussion of the opinion evidence and, "[g]enerally ... not decide whether a source's opinion is well founded, but whether the ALJ provided sufficient reasons for rejecting the opinion of a treating source." Brown v. Colvin, No. 4:13CV01693 SPM, 2014 WL 2894937, at *5 (E.D. Mo. June 26, 2014) (quoting May v. Astrue, No. 09CV03480 NKL, 2010 WL 3257848, at *9 (W.D. Mo. Aug. 16, 2010)).

### 1. LaRhonda Jones, M.D.

As discussed above, in her medical source statement dated October 30, 2015, Dr. Jones reported that Plaintiff had extreme limitations in the domains of attending and completing tasks and caring for herself, and marked limitations in all other domains of functioning with the exception of moving about and manipulating objects – for which she found no limitation. The ALJ gave little weight to Dr. Jones' opinion because it was inconsistent with the objective medical findings of consultative examining physicians, Plaintiff's own statements and school records, and the findings of the state agency medical experts, set out above. In light of the record evidence in this case, the Court finds the reasons articulated by the ALJ are valid reasons for discounting the opinions of Dr. Jones. See, e.g., Anderson v. Astrue, 696 F.3d 790, 793-94 (8th

---

[6] For cases filed on or after March 27, 2017, the ALJ need not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings. Instead, the ALJ is to consider the persuasiveness of those opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).

15

Cir. 2012) (ALJ did not err in discounting opinion of treating physician where opinion was conclusory in nature, contained significant limitations not reflected in treatment notes/medical records, and was inconsistent with daily activities); Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) (ALJ did not err in discounting opinions of treating physician where cited limitations were not supported by clinical test results, observations, or other objective findings); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (ALJ did not err in discounting opinion of treating physician where limitations cited in MSS were not supported by objective testing). See also Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (ALJ may discount physician's opinion or treatment note resulting from claimant's encounter with physician that is linked primarily to claimant's "quest to obtain benefits, rather than to obtain medical treatment").

## 2. Heather Derix, Psy.D

Cognitive testing administered by Dr. Derix, which included the Wechsler Intelligence Scale of Children – 4th Edition (WISC-IV) and the Wechsler Individual Achievement Test – Third Edition (WIAT-III), indicated that Plaintiff functions in the borderline range of intelligence and highlighted clinically significant issues with inattention and restless behavior. (Tr. 382-83, 386) Dr. Derix cautioned however that Plaintiff demonstrated considerable variability in subtest scores, which "likely impacted her overall estimate of intellectual functioning." (Tr. 382) Dr. Derix opined that all of the testing data is indicative of a diagnosis of ADHD and warrants further treatment and accommodations. (Tr. 386) She recommended engaging Plaintiff in ADHD coaching geared toward managing her difficulties with organization and forgetfulness, and improving attention and concentration. Dr. Derix also recommended continued adherence to Plaintiff's current accommodations plan and medication regimen and opined that Plaintiff would benefit from a highly structured environment. (Tr. 387-389)

16

Plaintiff argues that Dr. Derix's findings were entitled to significant weight because they were consistent with the other evidence of record. Plaintiff further argues the ALJ's failure to mention Dr. Derix's evaluation was reversible error because he could not have determined functional equivalence without properly evaluating every medical opinion in the record. (Doc. No. 22 at 15) The Commissioner responds that Dr. Derix is a consultative examiner who saw Plaintiff almost seven months prior to the date of her disability cessation, whereas the ALJ specifically considered and discussed the more recent opinions of state agency physicians and Dr. Jones as well as more recent consultative examinations from Ms. Davis and Dr. Budreau. (Doc. No. 28 at 8) Furthermore, Dr. Derix determined that Plaintiff did not demonstrate a learning disorder in the areas of written expression, reading or mathematics. (Id.; Tr. 382-83)

Plaintiff's claim that the ALJ failed to address Dr. Derix's findings in his decision does not on its own present a basis for remand. An ALJ is not required to specifically discuss each piece of evidence in his decision. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). Simply because a matter is not referenced in the opinion does not mean the ALJ failed to consider the evidence in making his determination. Id. In this case, Dr. Derix's testing and recommendations was consistent with the evidence relied upon by the ALJ but does not suggest that Plaintiff is markedly impaired. To establish a marked limitation, the ALJ considers test scores combined with all other information about the claimant's functioning. 20 C.F.R. § 416.926a(e)(4)(i)(ii). Here, there is sufficient other record evidence to refute Plaintiff's claim of marked impairments in the domains of attending and completing tasks and interacting and relating with others. In particular, Plaintiff's IEP indicates that she works hard and is a cooperative, pleasant student who works with peers. Her report card showed all passing grades with the exception of one class. Dr. Budreau reported that Plaintiff appeared able to engage in age-appropriate activities in an

17

independent, appropriate, and effective manner. Plaintiff testified she has no trouble maintaining attention as long as she takes her medicine. Ms. Davis noted Plaintiff was able to correctly organize items into categories and to follow both single and two-step directives accurately. Her conversational speech was 100% intelligible to both the trained and untrained listener. In short, Plaintiff has not demonstrated that the ALJ failed to adequately develop the record or that additional evidence was necessary.

### VI. Conclusion

For these reasons, substantial evidence on the record as a whole supports the ALJ's finding that Plaintiff is no longer disabled, thus warranting denial of supplemental security income benefits.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 11th day of September, 2018.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE